# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-4325

_____

MICHAEL PAUL RODGERS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Thomas V. Dannheisser, Judge.

April 3, 2019

WETHERELL, J.

The appellant, Michael Paul Rodgers, was convicted of first-degree murder for killing a man on a sailboat. Rodgers argues on appeal that he was denied due process because he was not competent to stand trial. We reject this argument, finding no abuse of discretion in the trial court's determination that Rodgers was competent to proceed. Accordingly, we affirm Rodgers' conviction and his resulting life sentence.

## FACTS

The victim was strangled to death on his sailboat while it was anchored near Fort McCree in Escambia County. His body was found buried on a nearby beach. Police traced activity on the victim's credit card to a hotel in Louisiana where Rodgers was

staying under the victim's name. The victim's property—including his passport card, laptop computer, and cell phone—was in Rodgers' possession when he was arrested.

Rodgers confessed to killing the victim, but his explanation for the killing was delusional. Specifically, he claimed that after he got aboard the victim's sailboat,[1] he discovered that the victim's laptop had coordinates that were associated with some sort of bomb plot against the United States and that he decided to kill the victim because he (Rodgers) is a "messianic Muslim" and he was "not too fond of somebody being an American here claiming that Islam was involved and Islam had nothing to do with it."

Shortly after Rodgers was indicted, the prosecutor requested the appointment of a mental health expert to evaluate Rodgers' competency because he "made several illogical, nonreality based statements, such as having a chip implanted in his head by a government entity, and having been hypnotized by the FBI." The trial court granted the request and appointed Dr. Scott Benson to evaluate whether Rodgers was competent to proceed.

Dr. Benson's report discussed Rodgers' history of mental illness and his bizarre statements in this case, but concluded that he was competent to proceed based on his appreciation of the charges against him; appreciation of the range and nature of possible penalties; understanding of the adversarial legal process; capacity to disclose to his attorney pertinent facts surrounding the offense; ability to relate to his attorney; ability to assist his attorney in planning a defense; capacity to realistically challenge prosecution witnesses; ability to manifest appropriate courtroom behavior; capacity to testify relevantly; motivation to help himself in the legal process; and capacity to cope with the stress of incarceration prior to trial. The report also noted that Rodgers claimed to have exaggerated his mental health condition in a

---

[1] It is unclear how Rodgers got aboard the sailboat. He told investigators that he did not know the victim beforehand and that the victim was just in "[t]he wrong place at the wrong time."

previous case in order to get a diagnosis that was helpful to him in that case.[2]

The trial court found Rodgers competent to proceed based on Dr. Benson's report. Shortly thereafter, in response to Rodgers' request to again[3] represent himself, the trial court appointed another mental health expert, Dr. David Josephs, to evaluate whether Rodgers was competent to represent himself.

Dr. Josephs concluded that Rodgers was not competent to represent himself because, among other things, he was unable to communicate clearly and his decision-making ability was impaired. However, Dr. Josephs' report also explained that "[c]ertain competency related skills appear largely intact and did not appear to fluctuate to a disqualifying degree with his symptomatology," including Rodgers' "appreciation of the charges and allegations against him, the range and nature of possible penalties, understanding of the adversarial nature of the legal process, and his capacity to disclose pertinent facts surrounding the alleged offense."

The trial court denied Rodgers' request to represent himself based on Dr. Josephs' report, and the case proceeded to trial with Rodgers represented by appointed counsel. Rodgers' counsel informed the trial court at the outset of the trial that Rodgers attempted to fire him and that he "has not participated in his defense," but when the court asked whether counsel had any indication that Rodgers does not understand what is going on,

---

[2] Rodgers similarly told the trial court that he "played that role" in a prior case in which he was found not guilty by reason of insanity. Additionally, at trial, Rodgers told the court that "[w]hoever is . . . trying to make it out like I'm mentally incompetent, they can stick it up their ass."

[3] Rodgers was permitted to represent himself after a *Faretta* hearing held in connection with his first appearance, but he was subsequently appointed counsel when, during another *Faretta* hearing, he told the trial court that he has a "chip implanted in the frontal lobe of my brain that allows somebody to see and hear through my ears."

counsel explained that "he [Rodgers] is clearly making a choice not to talk to me" and opined that "it doesn't indicate to me that he is incompetent any way."

Rodgers made numerous bizarre comments—including an assertion that his father is "a supreme leader of Iran" and a request for "diplomatic immunity"—and frequently acted out during trial, which led to his removal from the courtroom multiple times. The trial court did not view Rodgers' conduct as an indication of incompetency, but rather expressly found it to be a conscious and deliberate effort to disrupt the trial.[4] Likewise, defense counsel expressed his opinion that Rodgers was attempting to "cause his own mistrial" through his disruptive behavior.

The jury found Rodgers guilty as charged. The trial court adjudicated Rodgers guilty and—after a sentencing hearing during which Rodgers went on an incoherent diatribe against the United States and asserted that, among other things, he was "an Islam

---

[4] Early in the trial, the court stated:

[F]or the record, I've observed Mr. Rodgers several times. When he wants to behave, he's certainly able to behave. [He] [s]at for over an hour, approximately, yesterday for jury selection, acted basically appropriate, spoke in appropriate volume with his attorney when he needed to. And then, when he decided he didn't want to behave, he acted out, so he was removed, and is fully within his control.

Later in the trial, the court stated:

For the record, I just wanted to make it clear that Mr. Rodgers was able to maintain his decorum for an extended period of time, was acting rationally, except when he decided, in the opinion of the Court, to make a conscious decision to disobey the Court's direction. It all seemed to be very conscious and very deliberate and something that was within his control to do or not do as he chose.

Prophet," "an Iranian foreign national," "a Native American," and "a Messianic Muslim"—the court sentenced him to life in prison.

This appeal followed.

## ANALYSIS

Rodgers challenges the trial court's initial determination that he was competent to stand trial as well as the court's failure to order another competency evaluation after he continued to make bizarre comments. We review both issues under the abuse of discretion standard of review.[5] *See Alston v. State*, 894 So. 2d 46, 54 (Fla. 2004) ("A trial court's decision regarding competency will stand absent a showing of abuse of discretion."); *Lawrence v. State*, 846 So. 2d 440, 447 (Fla. 2003) ("A trial court's decision regarding whether to hold a competency hearing will be upheld absent an abuse of discretion."). A trial court's decision does not constitute an abuse of discretion "unless no reasonable person would take the view adopted by the trial court." *Alston*, 894 So. 2d at 54 (quoting *Scott v. State*, 717 So. 2d 908, 911 (Fla. 1998)).

Not every defendant whose mental health problems manifest in bizarre or irrational behavior is legally incompetent to stand trial. *See Sheheane v. State*, 228 So. 3d 1178, 1179 n.1 (Fla. 1st DCA 2017) ("A defendant can be mentally ill but still legally competent."). Rather, "[t]he test for whether a defendant is competent to stand trial is 'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Peede v. State*, 955 So. 2d 480, 488 (Fla. 2007) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

---

[5] Rodgers argues that the *de novo* standard of review applies because it is a violation of due process to try and convict an incompetent defendant, but that argument is premised on the assumption that the trial court should have found Rodgers to be incompetent to stand trial. Thus, Rodgers is really challenging the propriety of the trial court's competency determination, which is subject to the abuse of discretion standard of review.

Here, we find no abuse of discretion in the trial court's initial determination that Rodgers was competent to stand trial despite his delusional explanation for the killing and his history of mental illness because the court's determination was based on Dr. Benson's report, which was uncontradicted and included a thorough analysis of the required factors. *See* Fla. R. Crim. P. 3.211(a)(2) (listing the factors to be considered by the expert when evaluating the defendant's competency to proceed). We have no authority to substitute our judgment for that of the trial court—or Dr. Benson—on the question of Rodgers' competency to stand trial. *See Alston*, 894 So. 2d at 54 ("Where there is sufficient evidence to support the conclusion of the lower court, [this Court] may not substitute [its] judgment for that of the trial judge.") (alterations in original) (quoting *Mason v. State*, 597 So. 2d 776, 779 (Fla. 1992)).

We also find no abuse of discretion in the trial court's failure to order another competency evaluation after Rodgers continued to make bizarre comments before and during trial because once Rodgers was found to be competent, a subsequent competency evaluation is only required "if a bona fide question as to the defendant's competency has been raised." *Boyd v. State*, 910 So. 2d 167, 187 (Fla. 2005); *see also* Fla. R. Crim P. 3.210(b) (requiring the trial court to hold a hearing to determine the defendant's competency when the court "has reasonable ground to believe that the defendant is not mentally competent to proceed").

Here, there is ample record support for the trial court's implicit determination that there were no reasonable grounds to believe that Rodgers was not competent to stand trial. First, although Dr. Josephs determined that Rodgers was not competent to represent himself, that does not call into question his competency to stand trial because "there is a heightened competency standard for actually representing oneself at trial." *Wall v. State*, 238 So. 3d 127, 141 (Fla. 2018) (citing *Edwards v. Indiana*, 554 U.S. 164, 177-78 (2008)). Second, consistent with Dr. Benson's determination that Rodgers was competent to stand trial, Dr. Josephs specifically noted in his report that Rodgers had "[c]ertain competency-related skills . . . largely intact," including the ability to appreciate the charges against him and assist with his defense. Third, Rodgers told the trial court and Dr. Benson

6

that he had previously exaggerated his mental condition in a prior proceeding.  Finally, although Rodgers made bizarre comments and behaved inappropriately during trial, both the trial court and defense counsel viewed his actions as a conscious effort to disrupt the trial rather than an indication of incompetency.

## CONCLUSION

For the reasons stated above, we reject Rodgers' due process claim concerning his competency to stand trial and affirm his first-degree murder conviction and resulting life sentence.

AFFIRMED.

ROBERTS and MAKAR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, and David Alan Henson, Assistant Public Defender, Tallahassee, for Appellant.

Ashley B. Moody, Attorney General, and Julian E. Markham, Assistant Attorney General, Tallahassee, for Appellee.