# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-1520
_____


DARRIUS ROMEO TUCKER,

Appellant,

v.

STATE OF FLORIDA,

Appellee.


_____


On appeal from the Circuit Court for Columbia County.
Leandra G. Johnson, Judge.

July 30, 2025


ROWE, J.

Darrius Romeo Tucker appeals his judgment and sentence for second-degree murder. Although he raises multiple issues on appeal, we write only to address his arguments that the court erred in finding that he (1) was competent to proceed to trial and (2) voluntarily waived his right to testify. Finding no merit in any argument raised on appeal, we affirm.

*Pretrial*

After his arrest, Tucker stopped speaking to anyone, including members of his family and his court-appointed attorney. For this

reason, defense counsel asked the court to appoint an expert to determine whether Tucker was competent to proceed to trial.

Dr. Peggy Vermont was the first expert to examine Tucker and speak to his mother. Tucker refused to make eye contact with Dr. Vermont or answer her questions. Tucker's mother reported that Tucker had no history of mental health treatment. Even so, two years before his arrest, he became paranoid and started talking about witchcraft. Dr. Vermont diagnosed Tucker with selective mutism and unspecified psychotic schizophrenia spectrum and other psychotic disorder. She concluded that Tucker was not competent to proceed to trial.

The State asked the court to appoint another expert to evaluate Tucker. The court appointed Dr. Jerry Valente to examine Tucker and to determine whether Tucker was malingering. As he did with Dr. Vermont, Tucker refused to answer any questions. Even so, Dr. Valente learned from jail medical staff that Tucker had spoken to them. He could not rule out that Tucker was malingering. Ultimately, Dr. Valente made a conditional finding that Tucker was competent to proceed.

A third expert was appointed. Dr. Mathew Nguyen was next to examine Tucker. Tucker refused to verbally answer any questions, but he made gestures with his hands to indicate an answer. Jail staff reported that Tucker would say "tray please" to get his food and that he verbally interacted with other inmates. Dr. Nguyen explained that selective mutism normally presents itself by the age of five and Tucker was twenty-one. Dr. Nguyen concluded that Tucker was malingering and found that he was competent to proceed to trial.

Defense counsel moved for a fourth expert to evaluate Tucker. The court granted the motion and appointed Dr. Tonia Werner. She tried to interview Tucker, but he refused to sit or participate in the interview. Dr. Werner concluded that Tucker was malingering. And she believed he was competent to proceed because there was no evidence that he did not have a factual understanding of the proceedings or the inability to assist his counsel if he chose to do so.

After a competency hearing, which was not transcribed, the court entered a written order finding Tucker competent to proceed.

*Trial*

The evidence adduced at trial showed that Tucker had a long-term friendship with the Shaw family, including the victim and his brothers, Dreonte, Jaden, and their cousin Damion Bradley. Tucker lived with his mother, and his grandmother.

In May 2022, Tucker and Dreonte were involved in an incident at Walmart that led the victim to believe that Tucker was mistreating Dreonte. The victim called Tucker to ask about the altercation, and he told Tucker that he would come to Tucker's home that night to resolve the dispute. Late that night, the victim drove Bradley, Jaden, and Bobby Miller to Tucker's home. Tucker was waiting for them outside of his home.

While the victim spoke with Tucker, the other men stood in the street. Tucker refused to comment about the altercation with Dreonte; instead, Tucker paced with his hand on his head. During the conversation between Tucker and the victim, Tucker's mother and grandmother exited the home. They asked the men to leave and threatened to call the police. The victim said that he did not come there to hurt anyone, he just wanted to know why Tucker hit Dreonte. Tucker asked his mother and grandmother to go back inside. The victim told Tucker, "if you do it again, bro, we're not going to mess with you like that anymore." Tucker paused, then pulled out a gun and reached around the women, shooting the victim in the stomach.

It was undisputed that the victim never touched Tucker and that the victim and his friends were unarmed. Bradley and Jaden testified that they did not realize that Tucker was armed until he shot the victim. The victim died from a gunshot wound to his abdomen.

Defense counsel moved for a judgment of acquittal, arguing that the State failed to make a prima facie case. The court denied the motion.

3

The court then inquired about whether Tucker would testify. Defense counsel explained to Tucker that he had the right to testify, but he was not required to do so. The trial court also explained that if Tucker chose to testify, he would be subject to cross-examination. Because Tucker still expressed confusion about what he should do, the court told him that there was no right or wrong answer.

Defense counsel represented to the court that he had spoken to Tucker three or four times about the decision to testify, and Tucker never gave him a definitive answer. Tucker eventually elected to waive his right to testify, and the court found that the waiver was freely, knowingly, and voluntarily entered.

The jury found Tucker guilty of second-degree murder, and he was sentenced to seventy-five years in prison. This appeal follows.

*Competency*

Tucker argues that the trial court erred in finding him competent to proceed and in failing to sua sponte reconsider its competency determination during trial. On appeal, we review whether competent, substantial evidence supports the trial court's competency determination. *Huggins v. State*, 161 So. 3d 335, 344 (Fla. 2014).

"Under the Due Process Clause of the Fourteenth Amendment, a defendant may not be tried and convicted of a crime if he is not competent to stand trial." *Id.*; U.S. Const., amend. XIV, § 1. Florida has adopted procedural safeguards to secure this right.

> To protect a defendant's right to not be tried while incompetent, the United States Supreme Court explained that states must provide adequate procedures to safeguard the right. *See Pate*, 383 U.S. at 386–87, 86 S.Ct. 836. The Florida Supreme Court adopted Florida Rule of Criminal Procedure 3.210 as a procedural mechanism to protect the due process right of a defendant not to proceed to trial while incompetent. *See Lane v. State*, 388 So. 2d 1022, 1025 (Fla. 1980); *Dougherty v. State*, 149 So. 3d 672, 677 (Fla. 2014) ("Florida Rules of Criminal Procedure

4

3.210–3.212 were enacted to set forth the required competency hearing procedures for determining whether a defendant is competent to proceed or has been restored to competency."). The rule requires a trial court "to conduct a hearing for competency to stand trial whenever it reasonably appears necessary, whether requested or not, to ensure that a defendant meets the standard of competency . . . ." *Lane*, 388 So. 2d at 1025.

*Awolowo v. State*, 389 So. 3d 788, 792–93 (Fla. 1st DCA 2024), *review granted*, No. SC2024-1165, 2024 WL 5241703 (Fla. Dec. 27, 2024).

Rule 3.210(b) requires a hearing when the trial court has "reasonable ground[s] to believe that the defendant is not mentally competent to proceed." *State v. Dortch*, 317 So. 3d 1074, 1080 (Fla. 2021) (quoting Fla. R. Crim. P. 3.210(b)). "The test for competence is whether a defendant can consult with his attorney with a reasonable degree of rationality and whether he understands the nature of the proceedings against him." *Berry v. State*, 237 So. 3d 1165, 1167 (Fla. 1st DCA 2018). In determining whether a defendant is competent to proceed, the trial court should consider the defendant's understanding of the charges against him and the range of possible sentences, the defendant's ability to assist counsel and display appropriate courtroom behavior, and the defendant's ability to testify relevantly. *Huggins*, 161 So. 3d at 344. The trial court must determine the weight to be given to conflicting expert testimony about a defendant's competency. *Id.* When there is evidentiary support for the court's resolution of the conflict, the appellate court will not disturb that resolution. *Id.* at 345.

Although he was afforded a chance to do so, Tucker did not file with this court a transcript of the competency hearing conducted in this case. Without this transcript, we cannot determine what factors the trial court considered in reaching its conclusion that Tucker was competent to proceed. *See Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979) ("Without a record of the trial proceedings, the appellate court can not properly resolve the underlying factual issues so as to conclude that the trial

court's judgment is not supported by the evidence or by an alternative theory.").

Despite the absence of the hearing transcript, the record evidence provides competent, substantial evidence to support the trial court's competency determination. The record includes the written evaluations from the four experts appointed to evaluate Tucker. Three of the four found that Tucker was competent to proceed and at least two of them believed that Tucker's selective mutism was a form of malingering. The trial court apparently gave greater weight to those three experts and afforded less weight to Dr. Vermont's report that concluded that Tucker was not competent to proceed. No matter, this court may not substitute its judgment for that of the trial court as to the weight to be given to the evidence before the court. *See Rodgers v. State,* 270 So. 3d 452, 456 (Fla. 1st DCA 2019). On the record before this court, competent, substantial evidence supports the trial court's competency determination.

Notwithstanding its initial determination of his competency, Tucker argues that the trial court should have sua sponte conducted another competency hearing when Tucker showed a lack of understanding of his right to testify. He also argues that his competency was in doubt before sentencing. On the record before us, we find no error in the trial court's failure to sua sponte make a second determination of Tucker's competency.

On the one hand, a trial court has a continuing obligation to conduct a competency hearing at any time it is reasonably necessary—whether it is requested or not. *Awolowo*, 389 So. 3d at 793. On the other hand, "[o]nce a defendant is determined competent to stand trial, a presumption of competence attaches to the defendant in later proceedings." *Boyd v. State*, 910 So. 2d 167, 187 (Fla. 2005). An additional competency hearing is necessary only if "a bona fide question" of the defendant's competency has been raised. *Id.* "Fundamental error will only arise from a trial court's failure to make a determination of the defendant's competency when the record shows there were reasonable grounds to believe that the defendant was incompetent to proceed." *Awolowo*, 389 So. 3d at 796. Here, nothing in the record after the trial court entered its written order determining that Tucker was

6

competent to proceed raised a bona fide question as to Tucker's competency.

Before jury selection began, the trial court asked both parties if there was any reason to believe that Tucker was not competent to proceed. The State shared that it had no information either way. Defense counsel stated that Tucker had not assisted in his defense, but that he had been attentive during discussions about the case. With those assurances, the trial court proceeded with jury selection. There is no indication in the record that Tucker displayed any behavior during the trial or sentencing that would have raised a bona fide question about his competency. Thus, the court did not err by failing to reconsider its initial determination of Tucker's competency to proceed or by failing to hold another competency hearing.

*Waiver of Right to Testify*

Tucker also argues that the trial court erred in finding that he knowingly, voluntarily, and intelligently waived his right to testify. Because defense counsel did not object when the trial court determined that Tucker waived that right, Tucker must show that fundamental error occurred. *See Melton v. State*, 386 So. 3d 603, 607 (Fla. 1st DCA 2024).

A criminal defendant has a fundamental right to testify under our state and federal constitutions. *Reynolds v. State*, 99 So. 3d 459, 484 (Fla. 2012). For a waiver of that right to be valid, the record must show the defendant made a knowing, voluntary, and intelligent decision. *Id.* The trial court conducted a thorough colloquy with Tucker on his right to testify. Indeed, the discussion spans eight pages of the trial transcript. Even so, Tucker argues that the trial court fundamentally erred when it failed to ask follow-up questions after Tucker said that he wanted to waive his right to testify. But this argument ignores that defense counsel attested that he explained the right to Tucker on three or four occasions and that the court explained the right to Tucker before he made his decision. Defense counsel and the court took great care to explain to Tucker that he was the only person who could decide whether to testify. Tucker also told the court that he did not have any more questions about testifying before he decided against it.

On this record, Tucker has failed to show that any error, much less a fundamental one, occurred. *See Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960) (explaining that fundamental error is error that reaches "down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error").

For these reasons, we AFFIRM Tucker's judgment and sentence.

LEWIS and WINOKUR, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Olivia M. Goodman of O'Brien Hatfield, P.A., Tampa, for Appellant.

James Uthmeier, Attorney General, and David Welch, Assistant Attorney General, Tallahassee, for Appellee.